JAMES EUGENE FLANIGAN ET AL V. JACK CARSWELL ET AL.

No. A-6968. Decided June 3, 1959.
Rehearing overruled June 24, 1959.
(324 S.W. 2d Series 835)

*Vinson, Elkins, Weems & Searls, Thomas B. Weatherly* and *Gaius G. Gannon, Jr.,* all of Houston, for petitioner.

The Court of Civil Appeals erred, in any event, in ordering the remittiturs made by the trial court as to both respondents, restored to the amounts specified in the original judgment. Adams v. Houston L. & P. Co. 158 Texas 551, 314 S.W. 2d 826; Humble Pipe Line Co. v. Spivey, 13 S.W. 2d 481; Texas & Pac. Ry. Co. v. Crown, 220 S.W. 2d 294, writ refused, n.r.e.

*Max Garrett,* of Houston, for respondents.

MR. JUSTICE SMITH delivered opinion of Court.

This is a suit for damages for personal injuries and property damage resulting from an automobile-ambulance collision at the intersection of Richmond and Mandell Streets in the City of Houston, Texas. Two separate suits were originally filed, one by Jack Carswell against James Eugene Flanigan and J. C. Smith, and the other by Flanigan against Jack Carswell. These suits were, by order of the trial court, consolidated. The order consolidating the two suits expressly provided that the suit filed by Flanigan would thereafter be considered as a cross-action to the original suit filed by Carswell. Each party alleged damages sustained as a proximate result of the negligence of the other. Smith, the owner of the automobile, filed a cross-action against Carswell for damage to his automobile. No issue was submitted to the jury as to Smith's property damage, and that question is not before us.

After the suits were consolidated, Bobby Wilson, a minor, acting through next friend, intervened. He sought damages from Flanigan and Smith for personal injuries which he alleged were sustained while he was a passenger as an attendant in the ambulance driven by Carswell and which were caused by Flanigan's negligence.

Submission of special issues to the jury resulted in findings

of negligence against Flanigan, the agent of Smith, and findings that such negligence was a proximate cause of the injuries sustained by Carswell and Wilson, and that the plaintiffs were damaged in amounts of $30,000.00 and $5,000.00, respectively. An order of the trial court directed Carswell to remit $18,000.00 and Wilson $3,000.00. After these remittiturs were filed, judgment was entered for Carswell in the sum of $12,000.00 and Wilson $2,000.00 against the defendants, Flanigan and Smith.

On appeal to the Court of Civil Appeals, that court reformed and affirmed the judgment of the trial court. 315 S.W. 2d 295. The Court of Civil Appeals held that the remittitur required of Carswell and Wilson by the judgment of the trial court was improper, and entered its judgment for the sums of $30,000.00 in favor of Carswell, and $5,000.00 in favor of Wilson, as found by the jury.

Flanigan and Smith are the only petitioners here. The application for writ of error contains twelve points of error. These points of error present two main questions. The first six points present the basic question that the Court of Civil Appeals erred in affirming the trial court's action in overruling their motions for instructed verdict and for judgment non obstante veredieto. These six points of error also present questions such as that the trial court erred in refusing to submit certain requested special issues. The next four points of error present the question that the Court of Civil Appeals erred in holding that a trial judge has no discretion to require a remittitur of a successful plaintiff when the evidence, viewed most favorably to the plaintiff, supports the original award of the jury. The last two points are not briefed.

Taking up the questions in the order of presentation in the application for writ of error, we set out only those facts material to our decision, and confine our discussion to such facts and the special issues submitted to the jury thereon, and the answers thereto.

Carswell was the owner and operator of an ambulance which had been issued a permit as an emergency ambulance by the Texas State Board of Health, pursuant to the authority conferred by article 4590b, Vernon's Annotated Civil Statutes. The jury found that at the time of the collision Carswell was on an authorized emergency run, and that the vehicle was traveling at a rate of speed in excess of thirty miles per hour, but less than forty miles per hour. It is undisputed that Carswell had

only an ordinary Texas operator's license while driving the ambulance. In addition, the parties agree that ordinances, previously adopted by the City of Houston, provided that the speed limit in the area of the collision was thirty miles per hour for ordinary vehicles and forty miles per hour for emergency vehicles.

■ Flanigan and Smith contend that they were entitled to an instructed verdict for the reason that the action of Carswell and Wilson, in driving and riding in the ambulance at a speed found by the jury to have been in excess of thirty miles per hour was unauthorized by law, negligence and a proximate cause of the injuries sustained. They argue that he had only an ordinary operator's license, and that even though the ambulance was an emergency vehicle, its operator, Carswell, and the attendant, Wilson, riding in same with full knowledge of the circumstances, could not operate the ambulance at a rate of speed in excess of that applicable to ordinary vehicles when he had admittedly not complied with the law of the State requiring him to obtain a chauffeur's license. From this they conclude that the lack of a chauffeur's license, as a matter of law, gave the ambulance the status of that of an ordinary vehicle rather than that of an emergency vehicle, and, therefore, the lawful maximum speed limit was thirty miles per hour. With this we cannot agree. This contention of Flanigan and Smith, if adopted, would lead to a holding either (1) that an ambulance meeting the statutory definition of an "emergency vehicle" in all respects, but which at the time of the collision was being driven by Carswell, who was not licensed as a chauffeur, was not an "emergency vehicle" within the purview of the statute permitting an "emergency vehicle" to exceed ordinary speed limits, or (2) that, even though the ambulance was an emergency vehicle and could lawfully travel at a speed of forty miles per hour, the nonchauffeur-licensed driver of that ambulance could not accelerate its speed faster than thirty miles per hour. The contention thus made may be reduced to the narrow proposition that the status of an emergency vehicle operated on an emergency run is dependent upon the driver's license, at least in so far as the vehicle is authorized to exceed the ordinary speed limits.

It is unimportant to our decision whether or not an ambulance driver is required by article 6687b, Vernon's Annotated Civil Statutes of Texas, to be licensed as a chauffeur. Therefore, for the purposes of this case, we assume that Carswell should have had such a license, and that his driving without a proper

license was a violation of the penal provisions of article 6687b, supra. We nevertheless hold that the ambulance was an "emergency ambulance" and that the failure of Carswell to have a chauffeur's license did not render his driving negligence per se.

We have already stated that Carswell had secured a Texas permit which authorized him to use emergency ambulances as a part of his business, and that when the collision occurred he was on an authorized emergency run. Article 791, Vernon's Annotated Penal Code, provides that article 827a(8) of the Penal Code, which prescribed speed limits in this State, "shall not apply * * * [to] ambulances responding to emergency calls; provided that incorporated cities and towns may by ordinance regulate the speed of ambulances." The City of Houston, pursuant to the authority conferred by article 791, supra, has adopted an ordinance that "it shall be unlawful for any person to operate or drive * * * [an] ambulance responding to an emergency call * * * at a rate of speed in excess of forty miles per hour."

■ Under article 827a(8), supra, and the Houston ordinance, the "person" operating the vehicle is forbidden to exceed the prescribed limits. "Person" is nowhere defined in the statutes regulating motor vehicles, either civil or criminal, as meaning a properly licensed driver or operator. Article 6687b(1), the driver's license statute, defines "persons" as "every natural person, firm, copartnership, association, or corporation." Even though the measures regulating speed of vehicles speak of the operators, we do not believe that the legislature intended by its use of the word "person" to make the lawfulness of the rate of speed at which a vehicle travels dependent upon the status of the license of its driver. The statutes regulating speed of motor vehicles are not directed at drivers with valid licenses; they are directed at drivers generally, and written with the intention of regulating the speed of the vehicle. Were this not true, a person without any license would be guilty of negligence per se merely by driving an automobile upon the streets, because any speed would exceed that permitted of such operators.

To sustain the position of Flanigan and Smith would deny Carswell and Wilson a recovery, regardless of the negligence of Flanigan, as found by the jury and unquestioned here. It was not the intention of the legislature that article 6687b, supra, permit such result. The fact alone that Carswell was driving the emergency ambulance without securing a valid driver's license would not absolve Flanigan of negligence as the operator of the

other motor vehicle. See Miller v. Jones, Texas Civ. App., 270 S.W. 2d 303, wr. ref. n.r.e.; American Automobile Insurance Company et al. v. Struwe, Texas Civ. App., 218 S.W. 534 (1920), wr. ref., 29 A.L.R. 2d 970. The holding in these cases was based upon the theory that there could be no casual connection between the failure to secure a license and the accident.

■ We hold in this case that the failure of Carswell to secure a chauffeur's license, as required by statute, was not as a matter of law a proximate cause of the collision between the two motor vehicles involved. No fact issue on the question is raised. Flanigan and Smith rely principally upon such cases as Mundy v. Pirie-Slaughter Motor Company, 146 Texas 314, 206 S.W. 2d 587, 589; Spratling v. Butler, 150 Texas 369, 240 S.W. 2d 1016, and Walsh v. Dallas Railway and Terminal Company, 140 Texas 385, 167 S.W. 2d 1018. These cases have no application here. The first case involved a situation where it was claimed that the owner of the vehicle had entrusted the vehicle to one known to be an incompetent or reckless driver. The court held that the "mere proof that the defendant's agents were guilty of negligence per se or that they were guilty of negligence in fact, does not, of course, establish liability on the defendant's part. Plaintiff must go further and prove that such negligence was the proximate cause of the collision in which he was injured." The case of Spratling v. Butler, supra, was one where an employer had entrusted his motor vehicle to an unlicensed employee. This Court held that the question of whether such entrustment was a proximate cause of the damage alleged was properly submitted to the jury. Thus it is seen that both cases presented fact issues on the question of negligent entrustment and proximate cause.

The Walsh case, supra, involved the validity of an ordinance authorizing a chief of police to designate what vehicles of public service corporations should have special traffic privileges as authorized emergency vehicles. The court held that no standard was provided by which the police chief was to be guided in making such designation, and, therefore, such provision of the ordinance was invalid.

■ We come now to consider the question of whether or not the Court of Civil Appeals erred in ordering the remittiturs made by the trial court as to both respondents, Carswell and Wilson, restored to the amounts of $30,000.00 and $5,000.00, respectively. The question or remittitur is basically one of fact, and, in so far as the amounts only are concerned, one over

which this Court has no jurisdiction. However, the basic question here presented for determination is: Does the trial court have the authority to order remittiturs even though the evidence might support the original award of damages by the jury? This is a question of law, and is one over which this Court has jurisdiction.

Petitioners contend that the Court of Civil Appeals used an improper test in determining that the remittiturs ordered by the trial court should be restored, and judgment entered on the jury verdict. We sustain these contentions.

Since 1846, it has been within the power of the trial court to order a party to remit a portion of the damages awarded as a condition to the overruling of the other party's motion for new trial. See Thomas v. Womack, 13 Texas 580, 584. However, it was not until 1893, with the creation of the courts of civil appeals, that Texas appellate courts were empowered "suggest" (or order) remittiturs in cases where it was deemed that the judgment was excessive. Before that time, it was necessary to reverse and remand for a new trial. Articles 1861, 1862, Revised Civil Statutes of 1925; Texas & N. O. R.R. Co. v. Syfan, 91 Texas 562, 44 S.W. 1064. The statutes permitting the appellate courts to suggest remittiturs in proper cases do not by their terms affect the trial court's power.

Those statutes granting to the courts of civil appeals the power to order remittiturs were carried forward virtually intact into Rules 439 and 440, Texas Rules of Civil Procedure. The trial courts retained their traditional authority under Rules of Texas Civil Procedure, 315, 319, and 328. The answer to the question here discussed depends largely upon the constructtion of Rule 328, which provides:

"New trials may be granted when the damages are manifestly too small or too large, provided that whenever the [trial] court shall direct a remittitur in any action, and the same is made, and the party for whose benefit it is made shall appeal in said action, then the party remitting shall not be barred from contending in the appellate court that said remittitur should not have been required either in whole or in part, and if the appellate court sustains such contention it shall render such judgment as the trial court should have rendered without respect to said remittitur."

The source of Rule 328 was Article 2235, now repealed. The

statute read as follows: "New trials may be granted when the damages are manifestly too small or too large." When Rule 328 was promulgated, all the text after the word "large" was added. It is this additional provision with which we are particularly concerned. The question may be abstractly stated thus: When there is an appeal by the party in whose favor a remittitur has been ordered, and the remitting party contends that the remittitur should not have been ordered, what is the test or standard to be used by the reviewing court in determining the propriety of the trial court's order?

It is evident that there has been a divergence of opinion expressed by some of the courts of civil appeals as to their power under Rule 328 to review a trial court's order of remittitur. Where the trial judge has required a party to remit part of his verdict as a condition to the overruling of the adversary's motion for new trial, and this action has been questioned on appeal, two different standards have been applied in testing the propriety of the order of remittitur. One group of cases has treated the question as one of the sufficiency of the evidence in support of the verdict. Davis Transport, Inc., v. Bolstad, Texas Civ. App., 295 S.W. 2d 941, no writ history; Red River Valley Publishing Co. v. Bridges, Texas Civ. App., 254 S.W. 2d 854, writ ref. n.r.e.; Tarrant County Water Control & Improvement Dist. v. Fowler, Texas Civ. App., 175 S.W. 2d 694, writ ref. w.o.m., with written opinion, 142 Texas 375, 179 S.W. 2d 250. This Court, however, did not have the question here involved before it in the last cited case. On the other hand, it has been held that the reviewing court must determine the order's propriety by deciding whether the trial judge abused his discretion in making the order. Thompson v. Clements, Texas Civ. App., 202 S.W. 2d 341, writ ref. n.r.e.; Adams v. Houston Lighting & Power Co., 158 Texas 551, 314 S.W. 2d 826; Phoenix Refining Co. v. Morgan, Texas Civ. App., 178 S.W. 2d 175, writ ref. w.o.m.; see also Texas & N.O.R.R. Co. v. Goolsbee, Texas Civ. App., 238 S.W. 2d 250. The Goolsbee case was before this Court on questions not involved here. See 149 Texas 445, 234 S.W. 2d 407, and 150 Texas 528, 243 S.W. 2d 386.

The Court of Civil Appeals in the present case, by following the rule announced in the first group of cases cited above, adopted the wrong standard. In reaffirming such standard, the court said:

"In the absence of evidence to show that the jury verdict

was improperly motivated and in the absence of any reason assigned by the trial court for requiring remittiturs and the verdict being within the bounds of reason we sustain appellees' * * * point and, in accordance with Rule 328, render judgment on the jury verdict. To do otherwise would be to make jurors of judges." See 315 S. W.2d at 311.

We think the rule announced in the second group of cases, supra, is more in harmony with Rule 328, and is the one that should control here.

The trial court, in deciding whether a verdict is excessive and a remittitur required to cure the error, should be governed by the same standard as the courts of civil ppeals. See World Oil Co. v. Hicks, Texas Com. App. (1937) opinion adopted by the Supreme Court. 129 Texas 297, 103 S.W. 2d 962; Galveston, Houston & S. A. Ry Co. v. Johnson, 24 Texas Civ. App., 180, 58 S.W. 622, writ refused (1900). This standard was set forth by this Court in Wilson v. Freeman, 108 Texas 121, 185 S.W. 993, 994, as follows:

"All the Court of Civil Appeals can do, and all that is required of it to do * * * is to exercise its sound judicial judgment and discretion in the ascertainment of what amount would be reasonable compensation for the injury sustained, and treat the balance as excess * * * [Having] decided upon an amount that would be reasonable compensation * * * it should authorize a remittitur of the excess * * * in accordance with its sound judgment."

■ We interpret the above holding as meaning that where the trial judge has ordered a party to remit a portion of the jury verdict as a condition for overruling a motion for new trial, the Court of Civil Appeals, in passing upon such action under Rule 328, supra, should allow the trial court's action to stand unless it be of the opinion that the remittitur ordered by the trial court, when considered in the light of the whole record, would render the order of remittitur manifestly unjust. If, in the light of all the facts and circumstances, the trial court's order of remittitur was manifestly unjust, the Court of Civil Appeals should restore the remittitur or such part thereof as the Court of Civil Appeals deems necessary to prevent the order from being manifestly unjust and render such judgment as the trial court should have rendered.

Since an erroneous rule of law was applied by the Court

of Civil Appeals in passing upon the remittitur question, it becomes necessary to remand the cause to that court for further consideration consistent with this opinion.

In addition to the matters heretofore discussed. we deem it necessary to refer briefly to the Court of Civil Appeals' opinion wherein the majority seem to give some weight to the fact that the trial court assigned no reason for its action in requiring a remittitur. We think this has no relevancy in deciding the remittitur question.

The opinion of the Court of Civil Appeals also indicates that it based its judgment partly upon the fact that there was an absence of evidence showing that the jury verdict was improperly motivated. We are of the view that there need not be extraneous proof of passion or prejudice or any other proof showing that the jury was "improperly motivated." The Court of Civil Appeals, in passing on the propriety of the trial court's order need not have evidence showing the verdict was improperly motivated before sustaining the trial court's order granting the remittitur. See Dallas Ry & Terminal Co. v. Farnsworth, 148 Texas 584, 227 S.W. 2d 1017.

The judgment of the Court of Civil Appeals is reversed, and the cause is remanded to that court for further consideration in accordance with his opinion.

ASSOCIATE JUSTICE HAMILTON not sitting.

Opinion delivered June 3, 1959.

Rehearing overruled June 24, 1959.